**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TIMOTHY AARON SHORT,

Plaintiff,

v.

STEVEN MARY, *et al.*,

Defendants.

Case No. 1:13-CV-704

Judge Michael R. Barrett

**OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss of Defendants Steven Mary and James Fife. (Doc. 4). Plaintiff Timothy Aaron Short has filed a response in opposition (Doc. 5), and Defendants have filed a reply (Doc. 6). This matter is now ripe for review.

## I. FACTUAL AND PROCEDURAL OVERVIEW

### A. Factual Background

Plaintiff Timothy Aaron Short ("Short") is an employee of the Ohio Department of Transportation ("ODOT") and a member of the Ohio Civil Service Employees Association (the "Union"). (Doc. 1, PageID 1). Short has worked for ODOT, District 8, in a Highway Technician position since January 31, 2000. (Doc. 1, PageID 2). Defendants Steven Mary ("Mary") and James Fife ("Fife") (collectively, "Defendants") are employed by ODOT, District 8, as the General Director and Personnel Director, respectively. (*Id.*). Mary and Fife both were responsible for overseeing all ODOT employees in District 8. (*Id.*).

ODOT and the Union have entered into a series of collective bargaining agreements that govern the terms and conditions of the Highway Technician position, the most recent of which became effective March 1, 2012 (the "CBA"). (*Id.*). The CBA divides various Highway Technician duties into numerical categories based upon the duties and responsibilities set forth in the job description for

the position. (*Id.*). Highway Technician 3 is primarily a maintenance position, with 85 percent of the duties involving routine highway and equipment maintenance, and only 15 percent involving oversight of construction contractors and paperwork. (*Id.* at PageID 2-3). A Highway Technician 4 is a construction position with 100 percent of the duties involving oversight of construction contractors and the inspection of construction work. (*Id.* at PageID 3). There is a difference in pay between the two positions. (*Id.*).

Short alleges that in 2008, Defendants instituted a work policy of assigning work usually performed by Highway Technician 4s to Highway Technician 3s without promoting those individuals (*Id.*). Short initially held a Highway Technician 3 position, but in October 2008, he applied for and was awarded a posted Highway Technician 4 position. (*Id.*). He received, however, only a lateral transfer, retaining the job title of Highway Technician 3. (*Id.*). Since November 18, 2008, Defendants assigned to Short construction inspection and contractor oversight duties associated with a Highway Technician 4 position without a corresponding raise in pay. (*Id.*).

District 8's Construction Department currently includes five employees, including Short, who are classified as Highway Technician 3s but are alleged to be performing the work of Highway Technician 4s. (*Id.*). In every other district, Highway Technician 3s are assigned to the Maintenance Departments. (*Id.*). Those individuals in other district who are performing the duties currently assigned to Short are classified as Highway Technician 4s. (*Id.*).

Article 19 of the CBA governs the issue of "Working Out of Class." An individual is considered to be working outside his class when a substantial portion of his duties (i.e., 20 percent or more of the employee's time if to a higher classification) fall in another classification. (*Id.* at PageID 3-4).

When an employee disagrees with his classification, he may file a grievance under the CBA. Section 25.01 of the CBA defines a grievance as "any difference, complaint or dispute between the Employer and the Union or any employee regarding the application, meaning or interpretation of" the

CBA and indicates that the grievance procedure "shall be the exclusive method of resolving grievances." (Doc. 4-1, PageID 24). According to Section 25.03 of the CBA, "[o]nly disputes involving the interpretation, application or alleged violation of a provision of the Agreement shall be subject to arbitration" and any "decision and award of the arbitrator shall be final and binding on the parties." (*Id.* at PageID 26).

Article 19 specifically sets forth a two-step process for "Working-Out-of-Class" grievances. (Doc. 5-1, PageID 42).[1] Under Step One, "[t]he Agency Director or designee shall investigate and issue a decision after review and approval by the Office of Collective Bargaining . . . ." (Doc. 5-1, PageID 42). Upon investigation and review,

> [i]f the Director or designee determines that the employee is performing duties which meet the classification concept and which constitute a substantial portion of the duties (i.e., twenty percent (20%) or more of the employee's time if to a higher classification . . .) specified in another classification specification, the Director shall order the immediate discontinuance of the inappropriate duties being performed by the employee, unless the parties agree to the reclassification of the person and position pursuant to the provisions of this Article. . . .
>
> If the duties are determined to be those contained in a classification with a higher pay range than that of the employee's current classification, the Director or designee shall issue an award of monetary relief, provided that the employee has performed the duties as previously specified for a period of four (4) or more working days. . . . If the higher level duties are of a permanent nature as agreed to by the Union and the Employer, the employee shall be reclassified to the higher classification. . . .
>
> In no event shall the monetary award be retroactive to a date earlier than four (4) working days prior to the date of the filing of the original grievance. . . .

(*Id.* at PageID 42-43).

Any grievance that is not settled under Step One may be appealed to arbitration pursuant to the procedures set forth in Step Two. (*Id.* at PageID 43-44). At Step Two, the arbitrator must determine "if an employee was performing the duties which meet the classification concept and consist of a substantial portion of the duties[.]" (*Id.* at PageID 44). The arbitrator "will issue a binding bench decision at the conclusion of the hearing, which will identify if the employee was working out of

[1] The Court finds that the CBA is properly considered on a motion to dismiss because it is referenced in Short's Complaint, is central to his claims, and is attached, in part, to Short's memorandum in opposition (*see* Doc. 1, PageID 2-4; Doc. 5-1).

classification and for what period of time." (*Id.*). When an employee is found to be performing duties in a classification with a higher pay range than the employee's current classification, "the arbitrator shall order the Employer to immediately discontinue such assigned duties." (*Id.*). The monetary award may be consistent with that to be awarded under Step One. (*Id.*). The Union and the Officer of Collective Bargaining may agree, however, that the higher level duties are of a permanent nature and that the situation is otherwise in compliance with the provisions of the CBA, and may then mutually agree to reclassify the employee to the higher level classification. (*Id.* at PageID 44-45).

On July 31, 2012, Short filed a "Working-Out-of-Class" grievance under Article 19 of the CBA. (Doc. 1, PageID 4). Short alleged that he was being forced to work outside his classification as a Highway Technician 3, and sought to be reclassified as a Highway Technician 4 and receive back pay at the higher range. (*Id.*).

Short's "Working-Out-of-Class" grievance was heard by Arbitrator Howard D. Silver ("Arbitrator") on July 24, 2013. (*Id.*). The Arbitrator denied the grievance, stating:

> Grievant is doing job duties of Highway Technician 3, although duties are identical to duties required by Highway Technician 4. Ancillary duties, minimal, are in Highway Technician 3. Grievance refused because doing duties in Highway Technician 3.

(*Id*; Doc. 4-2, PageID 28).

**B. <u>Procedural Background</u>**

Short filed the present matter on October 1, 2013. (Doc. 1). In the Complaint, he alleges that he was denied equal protection of the law by Defendants for being forced to work out of classification as a Highway Technician 3 while similarly-situated employees in other districts within ODOT were classified as Highway Technician 4s. (Doc. 1, PageID 4). Short seeks monetary damages and injunctive relief. (*Id.* at PageID 2, 5).

Defendants move the Court to dismiss Short's sole cause of action due to lack of subject-matter jurisdiction and because Short has failed to state a claim upon which relief may be granted. (Doc. 4, PageID 14-21).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

The burden of proving jurisdiction is on the plaintiff when subject-matter jurisdiction is challenged pursuant to Fed. R. Civ. P. 12(b)(1). *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). Rule 12(b)(1) motions to dismiss based upon subject-matter jurisdiction generally come in two forms: 1) a facial attack on subject-matter jurisdiction; and 2) a factual attack on subject-matter jurisdiction. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack on subject-matter jurisdiction "questions merely the sufficiency of the pleading." *Id.* (citing *Ohio Nat'l Life*, 922 F.2d at 325). When reviewing a facial attack on subject-matter jurisdiction, the court takes the allegations in the complaint as true, which is a standard similar to that applied to a motion to dismiss pursuant to Rule 12(b)(6). *Id.* If the allegations establish federal claims, subject-matter jurisdiction exists. *Id.* In a factual attack on subject-matter jurisdiction, a court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.*

### B. Rule 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain 1) 'enough facts to state a claim to relief that is plausible,' 2) more than 'a formulaic recitation of a cause of action's elements,' and 3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). In determining whether the plausibility standard is satisfied, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Nevertheless, a court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Ordinarily, "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). There are exceptions to that rule, however. The court may consider other materials that are referenced in and integral to the complaint, that are public records, or that are otherwise appropriate for the taking of judicial notice. *See Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005); *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

## III. ANALYSIS

### A. Subject-Matter Jurisdiction

Defendants make two facial attacks on subject-matter jurisdiction. (Doc. 4, PageID 14). Defendants specifically argue that Short's cause of action is nothing more than a claim for breach of the CBA disguised as a claim brought under 42 U.S.C. § 1983 and the Equal Protection Clause, and the CBA sets forth exclusive jurisdiction to remedy those claims under which an arbitration decision is final and binding. (Doc. 4, PageID 15-16). For those reasons, Defendants contend that the cause of action cannot stand. (*Id.*). The Court disagrees.

On its face, the claim presented to the Court is grounded in the working-out-of-classification provisions of the CBA and their application to Short as a Highway Technician, and thus, concerns the application, meaning or interpretation of the CBA. Indeed, Short argued to the Arbitrator, as he does

here, that other Districts classified individuals performing the same work as Technician 4s. (*See* Doc. 5-2, PageID 64-65). The Arbitrator explained his reasoning for rejecting those arguments, indicating the only relief he would be permitted to provide if he granted the grievance was to take away Short's Technician 4 responsibilities, which also were Technician 3 responsibilities. (*Id.* at PageID 72-73).

As pled, however, the claim, though factually grounded in the CBA, is based upon rights derived from the Equal Protection Clause. Such a claim is distinct from the contractual rights to which Short was entitled under the CBA. While there indeed is a close connection between the asserted grievance and the constitutional claim, the facts taken in the light most favorable to Short indicate that his claim is a constitutional one under section 1983 that may be raised in federal court. *See McDonald v. City of West Branch*, 466 U.S. 284, 292 (1984) (holding that the determinations of labor arbitrators pursuant to collective bargaining agreements do not preclude subsequent federal actions to vindicate certain federal statutory and constitutional rights); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) (unsuccessful arbitration of minimum wage claim did not preclude subsequent federal claim under the FLSA); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53-54 (1974) (arbitration decision ruling against an employee was not binding on a subsequent racial discrimination claim filed by same employee where grievance procedure did not cover statutory claims); *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 548 (6th Cir. 2008), *cert. denied* 555 U.S. 1171 (2009) (holding that an adverse arbitration award does not preclude an employee from pursuing claims based rights afforded under the FMLA); *Wallace v. Suffolk County Police Dep't*, 809 F. Supp. 2d 73, 87 (E.D.N.Y. 2011) (discussing *McDonald* and declining to apply the doctrine of collateral estoppel to adopt the facts found by the arbitrator where the arbitrator's decision did not focus on the complexities of unconstitutional retaliation under section 1983).

That leads to the second argument raised by Defendants—that the CBA is the exclusive remedy available to a public employee for grievances and that the arbitration is final and binding. Although Article 25 of the CBA provides that the grievance procedure "shall be the exclusive method of

resolving *grievances*" and the "decision and award of the arbitrator shall be final and binding on the parties," the CBA makes no mention of grieving claims under section 1983 and the Equal Protection Clause. Similarly, Ohio law recognizes employees, employers, and employee organizations are bound by the grievance procedure when the agreement provides for final and binding arbitration of *grievances*. Ohio Rev. Code § 4117.10(A). Ohio law expressly recognizes, however, that laws "pertaining to civil rights" will "prevail over conflicting provisions of agreements between employee organizations and public employers" when the agreement does not make a specification about a matter. *Id.* As Short pled his claim as one under section 1983 for violation of the Equal Protection Clause and the CBA does not plainly demonstrate an intent to govern that constitutional claim, the Court concludes that the claim should be addressed on its merits.[2]

**B. 42 U.S.C. § 1983**

Defendants also seek to dismiss this matter on the basis that Short failed to allege a plausible section 1983 claim based on equal protection violations. (Doc. 4, PageID 17). To state a viable section 1983 claim, a plaintiff must allege that 1) he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States, and 2) the deprivation was caused by a person while acting under color of law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Section 1983 is not a source of any substantive rights but may be used to enforce constitutional rights and those rights defined by federal statutes. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

At this time, the dispute concerns only the first factor. As such, the Court concerns itself only with the issue of whether Short has stated a plausible claim under the Equal Protection Clause.[3] Under

---

[2] It also is noted that the issue of subject-matter jurisdiction is, to some extent, intertwined with, or simply another way of arguing, the merits of Short's equal protection claim. In such instances, the Sixth Circuit has indicated that it is more appropriate to assume subject-matter jurisdiction and to address the claim on the merits. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 444 (6th Cir. 2006) (stating that courts should not extend the concept of subject-matter jurisdiction which concerns cases falling within their adjudicatory authority "to capture other instances in which a court should dismiss or refuse to take a case").

[3] The Complaint does not assert a claim for violation of due process (Doc. 1), and Short agrees in his opposition brief that he is not asserting a claim for violation of the Due Process Clause (Doc. 5, PageID 37). Although Short asserts that the

the Equal Protection Clause, "states cannot make distinctions [that] . . . burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Here, Short has not alleged that Defendants made any distinction that burdened a fundamental right or targeted a suspect class (*see* Doc. 5, PageID 36-37). Instead, Short proceeds on the basis that his claim is subject to rational-basis review. (*Id.*).

There are two specific types of claims that are subject to rational-basis review. "In typical equal protection cases, plaintiffs 'generally allege that they have been arbitrarily classified as members of an identifiable group.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (quoting *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 601 (2008)) (internal quotations omitted). An identifiable group that has not been recognized as a suspect or quasi-suspect class receives rational-basis review. *Id.* (citing *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976)) (discrimination based on age is subject to rational-basis review); *Gadson v. Fuson*, No. 3:13-cv-1050, 2013 U.S. Dist. LEXIS 173431, at *8 (M.D. Tenn. Dec. 11, 2013) (identifying inmates as an "identifiable group" subject to the general rational-basis review). In some cases, however, a plaintiff may allege a "class-of-one" claim that also is subject to rational-basis review. *Engquist*, 553 U.S. at 601-02. In a class-of-one claim, "'the plaintiff [does] not allege membership in a class or group' but rather simply 'alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Davis*, 670 F.3d at 441 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (*per curiam*)); *see also Gordon v. Benson*, No. 1:12-cv-295, 2012 U.S. Dist. LEXIS 89247 (W.D. Mich. June 28, 2012) (prisoner alleging that he was not permitted to work in the prison library because of past misconducts even though another inmate with more serious misconducts was allowed to do so alleged discrimination based on a class-of-one theory and not based upon membership in an identifiable group or class). "'[T]he hallmark of [a class-

Court should find the CBA violates his substantive right to equal protection to the extent it precludes the Court from exercising subject-matter jurisdiction over the claim (Doc. 5, PageID 35, 37), the Court has determined *supra* that it has subject-matter jurisdiction over that claim. That argument thus need not be considered further.

of-one] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis*, 679 F.3d at 441 (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)).

In the present matter, Short's claim is one brought pursuant to a "class-of-one" theory, as he alleges that Defendants arbitrarily treated Short, as well as four other members in the Construction Department of ODOT, District 8, differently than other similarly-situated technicians in other districts of ODOT without a rational basis for doing so. (Doc. 5, PageID 31, 35-36).[4] Indeed, both of the cases upon which Short relies, (Doc. 5, PageID 36-37), concern a class-of-one claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Warren*, 411 F.3d at 711. Although there are five technicians in ODOT, District 8, purportedly affected, the number of individuals in a class is immaterial for the equal protection analysis. *Willowbrook*, 528 U.S. at 564.

The Supreme Court has recognized, however, that some types of state action are not amendable to rational-basis review, particularly employment decisions and other forms of discretionary decision-making:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist*, 553 U.S. at 603. This is particularly true in the circumstances presented in this matter, as the Supreme Court has directly held that "the class-of-one theory of equal protection has no application in the public employment context" and "ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance.'" *Id.* at 607, 609 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)). As the Supreme Court recognized, public

[4] It is noted that Defendants are alleged to have authority over only ODOT, District 8, employees and not over employees of any other district.

employees "typically have a variety of protections" from such personnel actions, "but the Equal Protection Clause is not one of them." *See id.* at 608. Given that Short, as a public employee, is challenging the employment decisions of Defendants in their roles of public employers, his claim is barred by *Engquist*.

Furthermore, Short's allegations do not plausibly show that Defendants lacked a rational basis for their employment decisions. Under rational-basis review, a "'plaintiff may demonstrate that the government action lacks a rational basis . . . either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)); *see also Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005). Short's allegations fall short in both respects. First, Short does not allege facts or make any argument suggesting that an animus or ill-will of Defendants motivated the actions.[5] Second, his allegations fail to plausibly show that the actions lacked "'*any conceivable basis*'" that rationally supported the decision to treat Short and others in ODOT, District 8, differently. *See Rapp v. Dutcher*, 557 F. App'x 444, 449 (6th Cir. 2014) (quoting *Trihealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005)). The allegation that the Arbitrator ruled that Short was doing duties of Highway Technician 3, even though the duties were identical to those required by a Highway Technician 4, and that ancillary duties were those of a Highway Technician 3, indicates otherwise. (Doc. 1, PageID 4). Moreover, the arbitration hearing transcript incorporated by reference in the Complaint, attached by Short to his response in opposition, and central to Short's claims indicates that the Arbitrator considered that the inspection duties of Short fell within the Highway Technician 3 position as well as the Highway Technician 4 position, and that the Highway Technician 4s may have had different levels of experience, skill, or value than the

[5] "To demonstrate animus or ill-will, 'a plaintiff must prove that the challenged government actions were motivated by personal malice *unrelated to the defendant's official duties.*'" *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x. 826, 837-38 (6th Cir. 2009) (quoting *Klimik v. Kent Cnty. Sheriff's Dep't*, 91 F. App'x 396, 401 (6th Cir. 2004)). Plaintiff makes no allegations that plausibly could be construed as showing personal malice unrelated to Defendants' official duties.

Highway Technician 3s. (Doc. 5-2, PageID 73-75). None of Short's allegations plausibly undermine that finding or otherwise show no conceivable basis that rationally supported the decision. Thus, while Short may disagree with the reasons provided and the decision may result in some inequality, the allegations do not plausibly show that Defendants lacked any conceivable basis for their actions.

Accordingly, the section 1983 claim based upon a purported equal protection violation must be dismissed.

**C. <u>Qualified Immunity</u>**

Defendants contend that they are entitled to qualified immunity because Short has failed to show a violation of a clearly established constitutional right. (Doc. 4, PageID 19-21).

In opposition, Short points to *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267 (1986), where the Supreme Court found a layoff provision in a CBA that favored African-Americans over Caucasians violated the Equal Protection Clause, and to *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), where the Supreme Court recognized that the arbitrary application of a facially-neutral statute or provision based on race and nationality violates the Equal Protection Clause. (Doc. 5, PageID 38). Short contends that those cases demonstrate that a reasonable person would understand that arbitrarily classifying construction employees in ODOT, District 8, would violate the employees' rights to equal protection. (*Id.*).

In reply, Defendants reiterate that Short failed to show he possesses a constitutional right that Defendants violated, and it distinguishes the two cases relied upon by Short because they concerned racial and national origin classifications, rather than classifications of certain highway technicians at a lower pay grade than other highway technicians. (Doc. 6, PageID 83-84).

Qualified immunity protects government officials from liability for civil damages under certain circumstances. The Sixth Circuit generally employs a two-step analysis in evaluating qualified immunity defenses. *Thacker v. Lawrence County*, 182 F. App'x 464, 468-69 (6th Cir. 2006) (citing *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005)). First, it considers whether a

constitutional right has been violated when the allegations are construed in the light most favorable to the injured party. *Thacker*, 182 F. App'x at 468. Second, it considers whether that right was clearly established. *Id.* On some occasions, it may be necessary to employ a third step, which is whether the plaintiff "'offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Id.* at 468 (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004)). In some cases, utilizing the third step increases the clarity of the analysis. *Id.* at 469. In many cases, however, "'if the right is clearly established, the conduct at issue would also be objectively unreasonable'" such that the second and third step are collapsed into a single analysis to avoid duplication. *Id.* (quoting *Caudill v. Hollan*, 431 F.3d 900, 911 n. 10 (6th Cir. 2005)). Qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments,'" and "'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2081 (2011)) (additional internal quotations omitted). "Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009); *see also Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (once qualified immunity is raised, "it is the plaintiff's burden to show that the defendants are not entitled to qualified immunity").

Here, the Court concludes that Defendants are entitled to qualified immunity. As explained *supra*, Short has failed to show that the actions of Defendants plausibly rose to the level of a constitutional violation. Moreover, Short has not shown that any such constitutional right was clearly established at the time of the conduct at issue. For a right to be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing' violates federal law." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)). While the exact action in question need not have been held unlawful, the unlawfulness must be "apparent from direct holdings, from specific examples

described as prohibited, or from the general reasoning that a court employs." *Feathers*, 953 F.2d at 848. While the cases relied upon by Short indicate that treating others differently on the basis of race and nationality plainly is prohibited, neither case makes it apparent that it would be constitutionally unlawful for a public employer to treat a class-of-one differently from similarly-situated employees in the public employment context. Indeed, the June 9, 2008 decision in *Engquist* indicates otherwise. 553 U.S. at 598 ("[T]he class-of-one theory of equal protection does not apply in the public employment context.").[6] The Court thus finds that Short has not met his burden of showing that any reasonable government official would have understood he was violating a clearly-established constitutional right at the time of the conduct in question.

Accordingly, Defendants are entitled to qualified immunity for any claim for civil damages against them.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 4) is **GRANTED**. It is **ORDERED** that Short's sole cause of action against Defendants for violation of the Equal Protection Clause is hereby **DISMISSED**, and this matter shall be **CLOSED** from the docket of the Court.

**IT IS SO ORDERED.**

s/Michael R. Barrett
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT

[6] *Engquist* was decided on June 9, 2008 prior to the alleged actions of Defendants in regards to Short. (*See* Doc. 1, PageID 3-4) (alleging that Short applied in October 2008 for the posted Highway Technician 4 position but was granted only a lateral transfer, that Defendants have assigned Short construction inspection and contractor oversight duties associated with a Highway Technician 4 position without a corresponding raise in pay since November 18, 2008, and that Short filed a grievance on July 31, 2012 with an arbitration decision rendered on July 24, 2013).